Larry C. Davis, Petitioner v. Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Call Chronicle Newspapers, Inc., Respondents.

Argued June 4, 1981, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Richard J. Orloski, Stamberg, Caplan & Calnan,* for petitioner.

*Charles W. Elliott,* with him *John P. Thomas, Thomas and Hair,* for respondents, Call Chronicle Newspapers, Inc.

OPINION BY JUDGE MENCER, August 17, 1981:

Larry C. Davis (petitioner) has appealed from a decision of the Workmen's Compensation Appeal Board (Board) which upheld the referee's decision to award benefits for only one month. We affirm.

The petitioner injured his back and neck at work on October 28, 1974. He was paid compensation for this injury by Call Chronicle Newspapers, Inc. (employer). A final receipt was executed on or about January 3, 1975.

On November 11, 1974, the petitioner had returned to "light work" with the employer, in which capacity he continued until January 22, 1975, when he and a co-worker were assigned to move 230 boxes of old newspaper clippings from one warehouse to another. The petitioner claims that he reinjured his back while moving the boxes. He reported the injury to his supervisor and sought medical attention.

The petitioner did not work from January 23, 1975 until February 21, 1975. He was then offered the job of night watchman by the employer. This job required that the petitioner make an hourly tour of the employer's four-story building, using one of two stairwells to travel between floors. The petitioner tried the job for 6 hours, left, and did not return. He claimed that walking and climbing stairs aggravated his injured back and neck. The petitioner was examined on February 27, 1975 by the employer's physician, Dr. Richard White, who found that all disability had ceased.

The petitioner filed a claim for compensation for the January 22 injury. This claim was treated as a petition to set aside the final receipt of January 3, pursuant to Section 434 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1001. After extensive hearings, the referee awarded benefits for the period between January 23, 1975 and February 20, 1975, inclusive. The referee's findings and conclusions were upheld by the Board and this appeal followed.

Where a workmen's compensation claimant seeks to set aside a final receipt, he has the burden of proving, by clear and convincing evidence, that all disability attributable to the original injury had not terminated when the final receipt was executed. *Ferguson v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 394, 423 A.2d 63 (1980). In the

present case, the referee decided that the petitioner met that burden. We are not asked to review that decision.

Once disability has been established, it is the burden of the employer to establish that disability has ceased or that the disability is partial and suitable work is available to the claimant. *See Fashion Prints v. Workmen's Compensation Appeal Board*, 57 Pa. Commonwealth Ct. 250, 425 A.2d 1221 (1981). In this case, the referee found, *inter alia*, that suitable work became available to the petitioner on February 21, 1975 and that all disability had ceased as of February 27, 1975. The petitioner takes issue with the first of these findings, contending that it was based upon the answer to an improper hypothetical question and is therefore not supported by substantial competent evidence.

These proceedings involved at least three evidentiary hearings which took place on August 15, 1975, March 9, 1976, and March 26, 1979. At the hearing of August 15, 1975, the employer presented the testimony of Howard J. Moyer who had held the position of night watchman in the employer's building for 8 years. Moyer described the duties and physical requirements of the job at great length.[1] At the same hearing, the petitioner presented testimony concerning his medical

---

[1] According to Moyer, the job required him to walk through the building once each hour to make sure doors were locked and to watch for fires, leaks, intruders, etc. In the course of his rounds, he had to punch 16 time clocks at various points throughout the building. Each clock had to be punched once each hour. Moyer testified that he normally walked at an "easy pace" and was able to complete his rounds in 30 to 35 minutes. This left at least 25 minutes each hour during which he could rest. Moyer normally walked up the rear stairway and down the front stairway, each of which consisted of four flights of stairs. Each flight was somewhat longer than normal because of the high ceilings in the building.

condition.[2] On March 9, 1976, the employer presented the testimony of Dr. White as to the petitioner's medical condition. Based upon all of this evidence, the referee found that

> the position of night watchman for [the] employer did not require walking or climbing and descending stairs at anything greater than a moderate pace, did not require any heavy lifting or pushing or pulling, was within any residual limitations the claimant may have had from the injury incurred on January 22, 1975, and was available to the claimant following February 21, 1975.

This finding is supported by substantial evidence and will not be disturbed by this court.

The petitioner argues that this finding is somehow "tainted" by a hypothetical question asked of Dr. White at the March 9, 1976 hearing. After discussing the petitioner's medical condition, Dr. White was asked the following question:

> Q. Assuming that the pains which this claimant related to you were valid—only assume for hypothetical purposes—would he at the time of your examination be able to perform the job as a night watchman which would require him to walk approximately, walk through approximately a 3-story building, namely the Call Chronicle building—which I am sure you are familiar with at least from the outside—during a period of one hour doing nothing more stren-

---

[2] The petitioner's medical expert, Dr. Connelly, testified: "I don't think that walking at a moderate pace should cause him any undue strain." Dr. Connelly did not offer an opinion as to the petitioner's ability to climb stairs. The closest he came was the statement that "at that particular time in his attempt at recuperation . . . his neck may not have been stable enough for him to tolerate going up and down stairs."

uous than punching a clock at various stations?
Even assuming all his complaints were valid,
would he have been able to do that?

The petitioner's objection to the form of the question was overruled, and the doctor's answer was an unequivocal yes.

We agree that the wording of this question was somewhat ambiguous, and the referee would not have erred had he sustained the objection. *See Donaldson v. Maffucci,* 397 Pa. 548, 156 A.2d 835 (1959). Nevertheless, the record contains other substantial, competent evidence which is sufficient to support the referee's finding that the night watchman job was suitable. Therefore, even if the petitioner's objection to the form of the question should have been sustained, any error which may have resulted from overruling the objection was harmless. For this reason, we enter the following

ORDER

AND Now, this 17th day of August, 1981, the order of the Workmen's Compensation Appeal Board, dated July 24, 1980, which upheld the determination of the referee relative to the claim of Larry C. Davis, is hereby affirmed.